UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D
NOV 1 5 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-679-GWU

CONLEY THOMPSON, PLAINTIFF,

VS: MEMORANDUM OPINION

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT,

## INTRODUCTION

Conley Thompson originally brought Thompson v. Barnhart, London Civ. A. No. 03-475-GWU (E.D. Ky) to obtain judicial review of an unfavorable administrative decision on his application for Supplemental Security Income. After a period of administrative reconsideration prompted by the Court's Memorandum Opinion, Order, and Judgment of August 31, 2004, it is again before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has established the following test for judicial analysis of benefit denial cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 416.921.

1

4.   Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.   Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.   Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform his kind of past relevant work? If yes, the claimant is not disabled. If no, proceed to step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7.   Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(l).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1985).

In applying this analysis, it must be remembered that the principles applicable to judicial review of administrative agency action apply. Judicial review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence and in deciding whether the Commissioner employed the proper criteria in reaching his conclusion; the findings as to any fact, if supported by substantial evidence, shall be conclusive. Id. This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion"; it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Id.

One of the factors in the administrative record may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d

2

654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).

Additional information regarding the specific steps of the seven-part Garner test cited earlier is also valuable.

In step three of the analysis, the issue is whether the plaintiff has a "severe impairment," defined by the regulations to mean one which significantly limits one's ability to perform basic work activities, which is in turn defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. 404.1521, 416.921. The Sixth Circuit has definitely cautioned against overly-restrictive interpretation of this term. Farris v. Secretary of Health and Human Services, 773 F.2d 85 (6th Cir. 1985). The burden is upon the plaintiff, however, to provide evidence complete and detailed enough to enable the Commissioner to determine that there is such a "severe impairment," Landsaw v. Secretary of Health and Human Services, 803 F.2d 211 (6th Cir. 1986).

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that she or he is unable to return to this work. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.

3

Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways that the Commissioner may meet his burden is through the use of the medical-vocational guidelines.

However, the medical vocational guidelines themselves may not even be fully applicable if a non-exertional impairment is involved. When this happens, the Commissioner may use the rules as a framework for decision-making. 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e). It may often be required for the agency to consult a vocational specialist in such cases. Damron v. Secretary, 778 F.2d 279 (6th Cir. 1985). Nonetheless, the finding by the Commissioner that a non-exertional impairment does not significantly affect the level of work that a claimant can do must be tantamount to a finding that this additional impairment is non-severe. Wages v. Secretary of Health and Human Services, 755 F.2d 495 (6th Cir. 1985).

One of the residual functional levels used in the guidelines, called "medium" level work, involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objections weighing up to twenty-five pounds; a person capable of this level of exertion is also deemed capable of performing at lesser levels of "light" and "sedentary." 20 C.F.R. 404.1567(c), 416.967(c). "Light" level work, involves the lifting of no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is in this category when it involves a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of work activity, must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b), 416.967(b). A "sedentary" level job encompasses the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an

4

occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a). The guidelines make it clear that disabilities such as postural restrictions or the lack of bilateral manual dexterity compromise a person's ability to do a full range of this type of work; they also indicate that a finding of disabled is not precluded when the person is not able to do a full range of sedentary work, even if that person is a "younger individual." 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e), 201.00(h).

Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only "if the question accurately portrays (plaintiff's) individual physical and mental impairments." Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Thompson, a 36 year-old former cable installer with a high school equivalent education, suffered from impairments related to mid and low back pain being status post two motor vehicle accidents in 1998. (Tr. 305-306). While the plaintiff was found to be unable to return to his past relevant work, the ALJ determined that he retained the residual functional capacity to perform a restricted range of medium level work. (Tr. 310). Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled. (Tr. 310). The ALJ based this decision, in large part, upon the testimony of a vocational expert. (Tr. 309).

After review of the evidence presented, the undersigned concludes that the administrative decision should be affirmed. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff. A

5

separate judgment and order will be entered simultaneously consistent with this opinion.

This action was previously remanded to the Commissioner for further consideration because the ALJ erred in relying upon the Medical-Vocational Guidelines despite the presence in the record of a number of non-exertional limitations which should have been presented to a vocational expert. <u>Thompson v. Barnhart</u> London Civ. A. No. 03-475-GWU (E.D. Ky), pages 5-6. Upon remand, this problem has been cured.

The hypothetical question presented to Vocational Expert Joyce Forrest included an exertional limitation to medium level work along with such non-exertional limitations as (1) an inability to more than occasionally stoop, crouch or climb ladders, ropes and scaffolds; (2) an inability to perform work requiring the maintenance of attention and concentration for extended time periods; (3) a need to avoid jobs requiring interaction with the general public; and (4) a need to be able to miss one day a month of work and occasionally two days. (Tr. 536). In response, the witness identified a significant number of jobs in the national economy which could still be performed. (Tr. 536-537). Therefore, assuming that the vocational factors considered by Forrest fairly depicted Thompson's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

The hypothetical question fairly characterized Thompson's condition as required by <u>Varley</u>. The physical limitations of the question were compatible with the opinion of Dr. Humilidad Anzures, a non-examining medical reviewer, who opined that the plaintiff's physical problems were "less than severe" in November

6

of 2004. (Tr. 519).¹ More severe physical restrictions than those presented in the hypothetical question were not identified by such treating and examining sources as the staff at the Spine and Brain Neurosurgical Center (Tr. 111-120), the staff at the White House Clinic (Tr. 121-126, 212-235), Dr. Bobby Kidd (Tr. 135-139, 433-437), the staff at the Williamsburg Family Practice Clinic (Tr. 166-173), the staff at Corbin Medical Associates (Tr. 199), and the staff at Memorial Hospital (Tr. 398-407, 455-461). These reports provide substantial evidence to support the administrative decision.

Thompson argues that the ALJ erred in rejecting the very severe restrictions identified by Dr. Maria Atienza, his treating physician, on an April 2003 assessment form. (Tr. 14-18, 236-240). The ALJ cited a number of reasons why this opinion was rejected in the earlier denial decision including the fact that the doctor had only provided conservative treatment, a lack of objective clinical and laboratory findings, and inconsistencies with other medical evidence of record. (Tr. 25). The Court specifically affirmed the ALJ's rejection of Dr. Atienza's opinion in its prior decision in this action. Thompson v. Barnhart London Civ. A. No. 03-475-GWU (E.D. Ky) p.5. The claimant has failed to show how the evidence adduced since the administrative hearing cures this deficiency. Therefore, the undersigned concludes that the ALJ properly rejected Dr.

---

¹The doctor had earlier opined that the plaintiff was restricted to a limited range of medium level work. (Tr. 190-198). The ALJ's hypothetical question was essentially consistent with these limitations. The ALJ omitted reference to occasionally kneeling and crawling which the doctor did report. (Tr. 192). However, Social Security Ruling 85-15 indicates that these activities would be rare in in all but very arduous work and, so, any error in omitting them would appear harmless. Dr. Anzures cites a number of medical records in support of her opinion including x-rays revealing that the claimant's cervical spine and thoracic spine were normal, physical examination results revealing normal station and gait, examination results of the knee revealing no tenderness, redness, warmth or swelling, and no evidence of muscle weakness. (Tr. 191-192).

7

Atienza's assessment.

The Court also finds no reversible error in the ALJ's handling of the evidence relating to Thompson's mental status. Despite finding that the plaintiff did not suffer from a "severe" mental impairment (Tr. 306), the ALJ included a number of mental limitations in the hypothetical question. Psychologist Kenneth Starkey, a examining consultant, found that the claimant's mental problems would not interfere with vocational retraining or placement. (Tr. 132). Psychologists Laura Cutler (Tr. 151-165) and Jay Athy (Tr. 174-188), the non-examining medical reviewers, each opined that the plaintiff did not suffer from a "severe" mental impairment. These opinions offset those of Psychologist Crystal Sahner (Tr. 427-431) and Medical Reviewers Stephen Scher (Tr. 452-453) and Edward Stodola (Tr. 515-516), the non-examining medical reviewers, each of whom reported the existence of somewhat more severe mental limitations than those presented to the vocational expert.

Treatment records from the Cumberland River Comprehensive Care Center suggest the existence of only "moderate" mental limitations, consistent with the mental factors presented in the hypothetical question based upon Global Assessment of Functioning (GAF) ratings of 55 and 60. (Tr. 408-413, 425-426). The American Psychiatric Association's Diagnostic and Statistical Manual for Mental Disorders (4th Ed.-Revised, 1994) indicates that such a GAF suggests the existence of only "moderate" psychological symptoms. Thus, this evidence is also consistent with the administrative decision.

The ALJ rejected the opinion of Dr. Atienza (Tr. 306), that Thompson could not handle stressful situations. (Tr. 463). Dr. Atienza was not a mental health professional and none of the treating, examining or reviewing mental health professionals made such a finding. The administrative regulations provide

8

that the opinion of a specialist regarding his area of expertise is generally entitled to greater weight than that of non-specialist. 20 C.F.R. Section 416.927(d)(5). Therefore, the ALJ could properly reject this opinion as binding.

Thompson argues that the ALJ did not properly evaluate his subjective pain complaints. Pain complaints are to be evaluated under the standards announced in Duncan v. Secretary of Human Services, 801 F.2d 847, 853 (6th Cir. 1986): there must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

In the present action, Thompson was found to be suffering from a potentially painful condition. However, even if he could be found to have satisfied the first prong of the so-called Duncan test, the claimant does not meet either of the alternative second prongs. The ALJ noted such factors as the conservative nature of the plaintiff's treatment, the lack of radiographic evidence of lumbar disc herniation, and his normal neurological examination. (Tr. 306-307). Thus, the medical evidence does not appear sufficient to confirm the severity of the alleged pain and objective medical evidence would not appear to be consistent with the plaintiff's claims of disabling pain. Therefore, the ALJ would appear to have properly evaluated Thompson's pain complaints.

After review of the evidence presented, the undersigned concludes that the administrative decision should be affirmed. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff. A

9

separate judgment and order will be entered simultaneously consistent with this opinion.

  This the ___15___ day of November, 2006.

                *G. Wix Unthank*
                G. WIX UNTHANK
                SENIOR JUDGE